UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE:<br><br>Application of CATERPILLAR CRÉDITO, SOCIEDAD ANÓNIMA DE CAPITAL VARIABLE, SOCIEDAD FINANCIERA DE OBJECTO MÚLTIPLE, ENTITAD REGULADA<br>for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in a Foreign Proceeding,<br><br>      Applicant.<br><br>CAROLINA ELIZABETH VÁRADY DE BELLOSTA, et al.,<br><br>      Intervenors,<br><br>v.<br><br>CATERPILLAR CRÉDITO, SOCIEDAD ANÓNIMA DE CAPITAL VARIABLE, SOCIEDAD FINANCIERA DE OBJECTO MÚLTIPLE, ENTITAD REGULADA,<br><br>      Applicant. | CASE NO. C22-1549JLR<br><br>ORDER |

ORDER - 1

## I.   INTRODUCTION

Before the court is Carolina Elizabeth Varady de Bellosta and Carlos Marcelina Jose Bellosta Pallares' (collectively, "the Bellostas") emergency motion for a temporary restraining order ("TRO"). (TRO Mot. (Dkt. # 5).) The Bellostas seek a temporary restraining order and preliminary injunction to prevent Caterpillar Crédito Sociedad Anónima de Capital Variable, Sociedad Financiera de Objecto Múltiple, Entidad Regulada ("Caterpillar") from reviewing, using, or disseminating phone records it obtained pursuant to a subpoena issued by this court (see 10/3/2022 Order (Dkt. # 2)) pending the resolution of their motion to intervene (see MTI (Dkt. # 3)) and their putative motion to quash the subpoena and for a protective order (see TRO Mot. at 2.)[1] Caterpillar opposes the motion, but is amenable to much of the relief the Bellostas seek, including allowing them to intervene in the action. (See TRO Opp. (Dkt. # 7) at 2.)

The court has considered the parties submissions, the balance of the record, and applicable law. Being fully advised,[2] the court (1) denies the Bellostas' motion for a TRO, (2) grants the Bellostas' pending motion to intervene, (3) orders Caterpillar not to use, review, or disseminate the phone records until a protective order is entered and to provide the Bellostas with copies of the phone records, and (4) orders the parties to enter into a stipulated protective order.

---

[1] The court uses page numbers in the ECF header for each of the documents it cites.

[2] Neither party has requested oral argument (see Mot. at 1; Resp. at 1), and the court has determined that oral argument would not be helpful to its disposition of the motions, see Local Rules W.D. Wash. LCR 7(b)(4).

## II. BACKGROUND

The court reviews the relevant background of the parties' relationship before discussing the procedural context of the TRO motion.

### A. International Chamber of Commerce arbitration and Curaçao litigation

The parties are currently engaged in an arbitration before the International Chamber of Commerce (the "ICC arbitration") in which Caterpillar seeks to enforce two personal guarantees Mr. Bellosta entered into on loans Caterpillar made. (*See* Vries Decl. (Dkt. # 1-2) at ¶ 5; TRO Mot. at 4-5.) Two months after Caterpillar initiated the ICC arbitration, Mrs. Bellosta filed suit in Curaçao (the "Curaçao litigation"), seeking to annul the personal guarantees on the basis that Mr. Bellosta did not obtain her consent prior to entering into the guarantees. (*See* TRO Mot. at 4.) The Bellostas state that such an oversight would make the guarantees invalid under Curaçao law. (*See id*.) Central to the Curaçao litigation is whether the Bellostas held Curaçao residency during times relevant to the personal guarantees. (*See id.* at 1; *see also* Disc. App. (Dkt. # 1) at 3.) According to Caterpillar, the next briefing deadline in the Curaçao litigation is November 14, 2022. (TRO Opp. at 3.)

### B. Caterpillar's *ex parte* 28 U.S.C. § 1782 application for discovery

Caterpillar submitted an *ex parte* application for leave to obtain discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782 in this court on September 27, 2022. (*See* Disc. App.) Caterpillar sought a subpoena for the Bellostas' phone records from T-Mobile US, Inc. ("T-Mobile"). (*See id.*; *see also* TRO Mot. at 1.) Specifically, Caterpillar sought all of the Bellostas' monthly account statements, records of telephone

ORDER - 3

calls, and text or SMS messages including "documents sufficient to show all call and text message activity, the phone numbers involved in calls and text messages, the date and time of all calls and text messages, the duration of calls, and the data usage and roaming information." (Subpoena (Dkt. # 1-1) at 13.) For Mrs. Bellosta, Caterpillar sought these records for the period from October 16, 2014 to October 11, 2017, and for Mr. Bellosta, Caterpillar sought these records for October 16, 2014 through October 11, 2017 and April 6, 2021 to the present. (*Id.*)

The court granted Caterpillar's application without prejudice to T-Mobile's right to object or move to quash. (*See* 10/3/2022 Order at 1). Caterpillar issued the subpoena to T-Mobile on October 6, 2022. (TRO Mot. at 8.) The Bellostas state that Caterpillar did not serve the Bellostas with a notice and copy of the subpoena before serving it on T-Mobile. (*Id*. at 7; 16 (citing Fed. R. Civ. P. 45(a)(4)).) Caterpillar does not dispute this assertion. (*See* TRO Opp.)

The Bellostas state that, "[a]s soon as practicable after [they] became aware of this Court's order, on October 20, 2022" they sent a letter to T-Mobile objecting to the production of any documents responsive to the subpoena. (*Id*. at 7.)[3] The Bellostas do not identify the specific date on or manner by which they discovered the underlying

---

[3] The Bellostas cite Exhibit 1 to the declaration of Binah Yeung in support of this statement. (TRO Mot. at 7.) However, that exhibit is an email communication between counsel beginning November 1, 2022 and does not contain any communications with T-Mobile or any communications with any party prior to November 1, 2022. (*See* Yeung Decl. (Dkt. # 5-3) ¶ 2, Ex. 1.) The court assumes, however, that the Bellostas have accurately represented their communications with T-Mobile.

order. The court must, therefore, conclude that the Bellostas knew of the order and subpoena prior to October 20, 2022. (*See id.*)

T-Mobile complied with the subpoena on either October 25 or 27, 2022, several days before the October 31, 2022 deadline. (*See* TRO Mot. at 3; TRO Opp. at 4.) The Bellostas state that on October 25, 2022, as part of a similar dispute regarding discovery pursuant to 28 U.S.C. § 1782 in the District of Puerto Rico (the "Puerto Rico discovery dispute")[4], they asked Caterpillar to provide them notice of any subpoena seeking their information under 28 U.S.C. § 1782, but that Caterpillar did not respond to this request. (*Id.* at 3.)[5] T-Mobile informed the Bellostas that it had complied with the subpoena on October 28, 2022. (*Id.*)

**C. The Bellostas' Motion to Intervene and TRO Motion**

On October 31, 2022, the Bellostas filed a motion to intervene in the present action in order to ask the court to quash the subpoena or for a protective order limiting the scope, content, and eligible uses of the phone records production. (*See* MTI.) That motion is currently pending before the court and becomes ripe for consideration on November 11, 2022. (*See* Dkt.) Caterpillar states that it does not oppose the Bellostas' motion to intervene in this case and that it has already so informed the Bellostas. (*See* TRO Opp. at 6, 7, 8.)

---

[4] Caterpillar consented to the Bellostas' intervention in that litigation and the dispute is ongoing. (TRO Mot. at 2-3; TRO Opp. at 7.)

[5] Neither party provides the court with any evidence of this exchange. (*See generally* Yeung Decl.; Marks Decl. (Dkt. # 8).)

On November 1, 2022, the Bellostas asked Caterpillar to (1) consent to their intervention, (2) provide the Bellostas with copies of the phone records, and (3) agree not to review, use, or disseminate the phone records while the Bellostas' motion to quash or for a protective order is pending. (Yeung Decl., Ex. 1 at 7-8.) The Bellostas also informed Caterpillar of their intent to file a TRO if Caterpillar was unable to consent quickly, advised Caterpillar that any documents containing communications between the Bellostas are protected by spousal privilege, and asked Caterpillar to redact birthdates in its filings for its § 1782 application. (*Id*. at 7.) At 4:46 p.m. that same day, the Bellostas asked Caterpillar for a response by 1:00 p.m. the next day regarding their requests. (*Id*. at 6.) On Wednesday, November 2, 2022, at approximately 9:00 a.m., Caterpillar agreed to pause its review of the records and not disseminate them for 48 hours pending its decision on the Bellostas' other requests. (*Id*. at 6.) The Bellostas filed the instant motion that evening, and Caterpillar timely filed its opposition. (*See* Dkt.)

On November 3, 2022, Caterpillar provided the Bellostas a proposed stipulation agreeing to all of the Bellostas' requests articulated in their November 1 email. (*See* Marks Decl. ¶ 2, Ex. A.) Caterpillars' proposed stipulation also set a briefing schedule for the Bellostas' underlying motion to quash or for a protective order and provided that the parties would jointly move to stay the Curaçao litigation until the Puerto Rico discovery dispute and the dispute before this court are resolved. (*See id*. at 4-6.) The parties have exchanged redline versions of the proposed stipulation but are unable to agree on staying the Curaçao litigation pending the outcome of the discovery disputes or

on a briefing schedule for the Bellostas' putative motion to quash or for a protective order.  (*See id.* ¶¶ 3-5, Exs. C-D.)

### III.   ANALYSIS

The Bellostas ask the court to enter a TRO and preliminary injunction.  The Bellostas ask the court to enjoin Caterpillar from using, disseminating, or reviewing the phone records produced by T-Mobile on October 25, 2022, until the court rules on the Bellostas' motion to quash the subpoena or for a protective order.  (TRO Mot. at 8.)  The court first reviews the legal standard for a TRO before turning to the Bellostas' motion and Caterpillar's opposition and proposed resolution.

**A. Legal Standard**

Federal Rule of Civil Procedure 65 empowers the court to issue a TRO.  Fed. R. Civ. P. 65.  A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  A plaintiff seeking a TRO in federal court must meet the standard for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "[T]he basic function of a preliminary injunction is to preserve the *status quo ante litem* pending a determination of the action on the merits."  *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).  To succeed, the Bellostas must establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest.  *Winter*, 555 U.S. at 20.  "In each case, courts 'must

balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* at 24 (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)).

### B. The Bellostas' Motion for a TRO

The Bellostas assert that they are entitled to a TRO because (1) they are likely to succeed in their motion to quash or for a protective order, (2) they will suffer irreparable harm to their privacy interests in the absence of a TRO, (3) the balance of equities tips in their favor, and (4) injunctive relief is in the public interest. (TRO Mot. at 9-23.) In opposition, Caterpillar asserts that it is amenable to much of the relief the Bellostas seek, but that a TRO would prejudice Caterpillar in the Curaçao litigation because it must use the phone records in its November 14, 2022 filing. (TRO Opp. at 7, 8.) The November 14 deadline would pass while the court considers the Bellostas' various motions. (*See id.* at 7; *see also* Dkt.) Caterpillar urges the court to deny the TRO and to instead: (1) allow the Bellostas to intervene in this action; (2) order Caterpillar to refrain from using, reviewing, or disseminating the phone records until the court resolves the Bellostas' forthcoming motion to quash or for a protective order; and (3) order Caterpillar to provide the Bellostas with the phone records and communications they requested. (TRO Opp. at 8.)

The court considers each element of the Bellostas' TRO argument before turning to Caterpillar's proposal.

1. <u>The Bellostas do not show a likelihood of success on the merits.</u>

The Bellostas argue that their putative motion to quash the subpoena and/or for a protective order is likely to succeed on the merits. (TRO Mot. at 9-19.) The court finds that the Bellostas have not shown a likelihood of success on the merits with respect to a motion to quash the subpoena or a motion for a protective order. The court addresses the Bellostas' likelihood of success on the merits of each putative motion.

*a. The Bellostas do not show a likelihood of success on their motion to quash.*

A subpoena should only be quashed or modified if it fails to allow a reasonable time to comply; requires a person to comply at a location at least 100 miles away from her residence or where she regularly transacts business; requires disclosure of privileged material; or subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). A motion to quash a subpoena must be timely filed. Fed. R. Civ. P. 45(d)(3)(A). Although the rule does not define "timely," courts generally consider a motion to quash timely if it is made prior to the return date of the subpoena. *See U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 238 F.Supp.2d 270, 278 (D.D.C. 2002). The party objecting to the subpoena bears the burden of showing that another party should not be permitted to obtain the discovery. *See Goodman v. U.S.*, 369 F.2d 166, 169 (9th Cir. 1996). Here, the Bellostas' motion is untimely and fails to discharge their burden of persuasion.

The court issued its order granting Caterpillar's § 1782 application on October 3, 2022, and Caterpillar served the subpoena on T-Mobile shortly thereafter. (*See supra*, Section II.B.) Caterpillar did not, however, comply with Rule 45's requirement that, "if the subpoena commands the production of documents . . . then before it is served on the

person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4); *see, e.g.*, *In re Edelman*, 295 F.3d 171, 178-79 (2d. Cir. 2002) (determining that subpoenas issued pursuant to § 1782 must comply with Rule 45). Caterpillar's failure to provide the Bellostas notice and a copy of the subpoena before serving T-Mobile with the subpoena is troubling, and could have hampered the Bellostas' ability to timely object to the subpoena. *See Rollins v. Traylor Bros., Inc.*, Case No. C14-1414JCC, 2017 WL 1756576, at *2 (W.D. Wash., May 5, 2017) (recognizing that notice should be given well in advance of the subpoena's production date "to enable reasonable opportunity for objection"). Caterpillar's alleged subsequent refusal to inform the Bellostas of § 1782 applications on October 25, 2022, is also troubling. (*See* TRO Mot. at 7.) But none of Caterpillar's omissions override the fact that the Bellostas were aware of the subpoena prior to October 20, 2022—well in advance of the subpoena's October 31, 2022 return date—and yet chose not to act for at least 11 days, when they finally moved to intervene in this action on October 31, 2022. [6] (*See* MTI; *see* Subpoena at 2.)[7] The motion to quash, therefore, is untimely, even in light of Caterpillar's failure to comply with Rule 45's notice requirement.

---

[6] If the Bellostas were "aware of" the court's order, they could have accessed the subpoena on PACER and been able to identify the subpoena's return date. (*See* Dkt.)

[7] The Bellostas' letter to T-Mobile objecting to any production does not discharge their burden where they did not register their objection with the court or contact Caterpillar for another five days. (*See* TRO Mot. at 7.) When the Bellostas did finally contact Caterpillar on October 25, 2022, they did not directly address the T-Mobile subpoena even though they knew about it; instead, they requested notice "if and when any subpoena would be served in any § 1782 proceeding." (*Id.*) This communication, as the Bellostas describe it, is not an objection.

ORDER - 10

Even if the Bellostas had timely filed their motion to quash, they have failed to carry their burden in demonstrating that the subpoena should be quashed. *See* Fed. R. Civ. P. 45(d)(3)(A). The Bellostas assert that the court should quash Caterpillar's subpoena because its application failed to meet the statutory requirements of 28 U.S.C. § 1782 and discretionary *Intel* factors. (TRO Mot at 9-11); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-66 (2004). But this court already determined that Caterpillar's application met the necessary requirements under 28 U.S.C. § 1782 and the discretionary factors set forth in *Intel*. (*See* 10/3/2022 Order.) The court need not revisit them now.[8]

The Bellostas do not argue that they will be able to show that the subpoena exhibits any of the factors set forth in Rule 45(d)(3)(A) in support of their putative motion to quash. (*See* TRO Mot. at 10-12.) Accordingly, the Bellostas have not met their burden in showing a likelihood of success on the merits of their putative motion to quash the subpoena.

---

[8] Caterpillar's failure to comply with Rule 45's notice requirements does not change the court's analysis in its October 3, 2022 order. Applications for discovery pursuant to § 1782 are frequently issued *ex parte* and the Federal Rules of Civil Procedure only govern the consequent discovery after the application is granted. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (stating that, once a § 1782 application is granted, "§ 1782 drops out" and the federal rules govern); *Tex. Keystone, Inc. v. Prime Natural Res., Inc.*, 694 F.3d 548, 554 (5th Cir. 2012) (same). Accordingly, even if Caterpillar had complied with Rule 45, the Bellostas' arguments would not have been properly before the court in the § 1782 proceeding, and the court need not address them now.

> *b. The Bellostas do not show a likelihood of success on their motion for a protective order.*

A court may enter a protective order limiting the scope or disclosure of discovery upon a showing of good cause. Fed. R. Civ. P. 26(c)(1). Rule 26(c) confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). As a threshold requirement, a party must engage "in a good faith meet and confer conference with other affected parties in an effort to resolve the dispute without court action." Local Rules W.D. Wash. LCR 26(c)(1).

Here, the parties engaged via email and phone call prior to filing the TRO motion, but the court does not find that they engaged in good faith in an effort to resolve the dispute on their own. (*See* Yeung Decl., Ex. 1 at 7-8.) Instead, the current record shows that Ms. Yeung, counsel for the Bellostas, emailed Christopher Marks, counsel for Caterpillar, on November 1, 2022—after the Bellostas had already filed their motion to intervene in order to move the court for a protective order. (*See id.*; *see* MTI.)

Even after filing the motion to intervene, the Bellostas did not engage with Caterpillar to agree to a protective order. (*See* Yeung Decl., Ex. 1 at 6-8.) Instead, the Bellostas asked Caterpillar to, among other things, pause its review of the phone records until the court could resolve their putative discovery motions and imposed a deadline to comply with their requests less than 24 hours later. (*See id.* at 6.) Although counsel for Caterpillar indicated it would be unable to meet the deadline but would nevertheless

pause review and use of the documents until it could confer with its client, the Bellostas filed their TRO motion that same evening. (*See id.*; TRO Opp. at 5; *see also* Dkt.)

The court finds that the parties' meet-and-confer conference did not meet Local Rule 26's "good faith" requirement because (1) it was unduly delayed and (2) the parties did not discuss entering a protective order without moving the court for one.

First, on the record before the court, the Bellostas waited more than 12 days after learning of the subpoena before sending any meet-and-confer email. (*See* Yeung Decl., Ex. 1 at 8; TRO Mot. at 6; *see also* Dkt.) Although the court agrees that Caterpillar should have notified the Bellostas of the subpoena per Rule 45(a)(4), the Bellostas nevertheless had ample time to try to resolve this dispute without court action after they learned of the subpoena prior to October 20, 2022, but they failed to do so. (*See supra*, Section III.A.1.b.) The Bellostas' extensive delay does not suggest good faith or genuine interest in resolving the dispute without court action.[9]

Second, the fact that the Bellostas had already announced their intent to file a motion to quash or for a protective order in their motion to intervene—before attempting to meet and confer—shows that Ms. Yeung's November 1, 2022 email was not a good faith effort to "resolve the dispute without court action," as LCR 26 requires. Local Rules W.D. Wash. LCR 26(c)(1). This email exchange may have been a "good faith" effort to avoid the need for a TRO, but it was not an effort to resolve the need for a

---

[9] Caterpillar suggests the Bellostas have intentionally delayed in order to "run out the clock" on Caterpillar's ability to use this and other discovery in the Curaçao litigation, where filing deadlines are imminent. (*See* TRO Opp. at 2.)

protective order and therefore does not satisfy LCR 26's good faith meet and confer requirement. *See id.* Accordingly, given the court's broad discretion to decide when a protective order is appropriate and the Bellostas' failure to comply with LCR 26's threshold requirements, *see Seattle Times Co.*, 467 U.S. at 36, the court finds that the Bellostas have not demonstrated a likelihood of success on the merits of their putative motion for a protective order.

The court recognizes, however, that were the good faith meet-and-confer requirement met, there is likely good cause for a protective order regarding Caterpillar's use and dissemination of the phone records and the Bellostas' ability to redact privileged information. Caterpillar largely agrees and has indicated its willingness to enter into a stipulation. (*See* TRO Opp. at 2, 8; Marks Emails). Accordingly, the Bellostas can obtain the relief they seek and avoid the harm they complain by entering into a stipulated protective order with Caterpillar.

2. <u>The Bellostas do not show that they will suffer irreparable harm absent a TRO.</u>

The court must determine whether a TRO is necessary to avoid irreparable harm to the moving party. Irreparable harm is established when a plaintiff is "unlikely to be made whole by an award of monetary damages or some other legal remedy at a later date, in the ordinary course of litigation." *Edge Games, Inc. v. Elec. Arts, Inc.*, 745 F. Supp. 2d 1101, 1117 (N.D. Cal. 2010) (citing *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851-52 (9th Cir. 2009)). The Bellostas argue that they will suffer irreparable harm absent a TRO because the phone records likely contain privileged communications and

their disclosure additionally violates the Bellostas' privacy interests. (*See* TRO Mot. at 20-22.)[10]

Here, Caterpillar has already indicated its willingness to enter a stipulation that would prevent each of these harms. (*See, e.g.*, TRO Opp. at 8). Therefore, the Bellostas have not shown that they will suffer the irreparable harm they complain of in the absence of a TRO.

### 3. The balance of equities does not tip in the Bellostas' favor.

Under this third factor, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.' " *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987)). In support of their TRO motion, the Bellostas argue that the balance of equities favors them because they must protect their privacy interests. (*See* TRO Mot. at 22.) They assert that Caterpillar, by contrast, "will suffer no prejudice if it is barred from reviewing, using, or disseminating these documents until further order of the Court." (*Id.*) Caterpillar disagrees. Caterpillar argues that the Bellostas can avoid any irreparable harm to their privacy interests by entering a stipulation. (*See* TRO Opp. at 8.) Caterpillar argues that *it* is the party that would suffer hardship were the court to

---

[10] The Bellostas further argue that they establish irreparable harm by showing that: they have not had an opportunity to object to the subpoena; the subpoena did not meet the requirements of § 1782; and the subpoena is overbroad and seeks irrelevant information. (TRO Mot. at 20.) As discussed above, the court has already determined that the subpoena meets the requirements of § 1782 and the court is not convinced that the Bellostas lacked an opportunity to object since they became aware of the order issuing the subpoena well before the return deadline. (*See supra*, Section III.B.1.a; N. 8.) The court is not persuaded that the subpoena sought information "irrelevant" to any claim or defense in the Curaçao litigation. *See* Fed. R. Civ. P. 26(b)(1).

enjoin it from using the phone records while the court resolves the Bellostas' putative discovery motions. (*Id.*) Caterpillar asserts that it would suffer prejudice in the Curaçao litigation, because the relevant filing deadlines will pass before this court can resolve any of the Bellostas' putative discovery motions. (*See id.*)

In light of Caterpillar's willingness to address the Bellostas' privacy concerns in a stipulated protective order and the prejudice Caterpillar may suffer in the Curaçao litigation, the court finds that the Bellostas have not carried their burden in establishing that the balance of equities tips in their favor.

4. <u>An injunction is not in the public interest.</u>

Finally, the court must weigh the impact of a preliminary injunction on the public interest. In support of their motion, the Bellostas argue that it is in the public interest to enforce Rule 45's notice requirement. (*See* TRO Mot. at 22-23.) The Bellostas also point to the public interest in protecting the privacy interests of litigants. (*Id.* at 23.) The court finds that although there are strong public interests in both (1) protecting privacy interests and (2) ensuring compliance with the rules, an injunction is not necessary to achieve either. First, this court has assumed, "without deciding, that there could be some privacy interest cognizable under federal law involved" in the discovery of phone records. *Tubar v. Clift*, No. C05-1154JCC, 2007 WL 214260, at *3 (W.D. Wash. Jan. 25, 2007) (limiting the scope of phone records produced to calls relevant to the underlying dispute). But the Bellostas will be able to protect their privacy interests implicated by the phone records in a stipulated protective order; an injunction is therefore not necessary to protect the public interest in maintaining the Bellostas' privacy.

Similarly, the court agrees that compliance with the Federal Rules of Civil Procedure is a fundamental requirement of any litigant in federal court, and Rule 45's notice requirement is essential to safeguarding "the ability to object to the release of the information [subject to subpoena] prior to disclosure." *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 380 (D. Md. 1999). But in light of the court's reasoning regarding the Bellostas' putative motion to quash the subpoena (*see supra* Section III.B.1.a), the court finds that an injunction would do nothing to protect the public interest in requiring compliance with Rule 45. The Bellostas are unlikely to persuade this court to quash the subpoena, so the likelihood that Caterpillar would have another occasion to comply with Rule 45's notice requirements is minimal at best.[11] The Bellostas therefore fail to carry their burden with respect to the fourth factor and the court concludes that a TRO is not necessary to protect the public interest.

**C. Caterpillar's Proposed Relief**

Caterpillar urges the court to deny the TRO and to instead: (1) allow the Bellostas to intervene in this action; (2) order Caterpillar to refrain from using, reviewing, or disseminating the phone records until the court resolves the Bellostas' forthcoming motion to quash or for a protective order; and (3) order Caterpillar to provide the Bellostas with the phone records and communications they requested. (*Id*. at 8.)

---

[11] Moreover, the Bellostas squandered their opportunity to object prior to disclosure of the phone records—the right Rule 45's notice requirement protects—when they waited at least 11 days before registering objection to the subpoena with either Caterpillar or the court. The court is not inclined to give the Bellostas a second bite at the apple.

1. <u>The Bellostas' motion to intervene.</u>

Caterpillar agrees not to oppose the Bellostas' motion to intervene and urges the court to grant the motion. (*Id.*; *see also* MTI.) Although the Bellostas' motion is noted for November 11, 2022, in the absence of any opposition from Caterpillar and in light of the urgency to resolve the parties' dispute before the filing deadline in the Curaçao litigation, the court resolves the motion here.

A party may intervene as of right in an action if it has a protectable interest in the action and its absence from the action would impair its ability to protect its interest. *See* Fed. R. Civ. P. 24(a)(2). Courts construe Rule 24(a) liberally in favor of potential intervenors. *California ex rel. Lockyer v. U.S.*, 450 F.3d 436, 440 (9th Cir. 2006). Courts in the Ninth Circuit rely on a four-factor test to determine whether a party may intervene as of right:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir.1993). The court finds that the motion to intervene, filed less than thirty days after the court's order on Caterpillar's § 1782 application, is timely. The court also finds that the Bellostas' interest in limiting Caterpillar's use of their phone records is a "significantly protectable" interest at issue in Caterpillar's application. *See id.* The court further finds that absent intervention, the Bellostas' ability to protect their interests will be impaired. *See id.* Finally, the Bellostas

persuasively argue, and Caterpillar concedes, that T-Mobile, the only party other than Caterpillar, is unable to adequately represent the Bellostas' interests. (*See* MTI at 10-11.) Accordingly, the court GRANTS the Bellostas leave to intervene in this action.

    2. <u>Caterpillar's use of the phone records.</u>

Both parties have asked the court to order Caterpillar to cease reviewing, using, or disseminating the Bellostas' phone records until the court can resolve the discovery dispute. (*See* TRO Mot. at 3; TRO Opp. at 8.) The parties have also asked the court to order Caterpillar to provide the Bellostas with copies of the phone records. (*See* TRO Mot. at 8; TRO Opp. at 8.) The court ORDERS Caterpillar to cease reviewing, using, or disseminating the Bellostas' phone records in any litigation, arbitration, or other proceeding for five days after the entry of this order or until the parties file a stipulated protective order with the court, whichever is first. The court ORDERS Caterpillar to provide the Bellostas with copies of all of the phone records produced by T-Mobile within two days of the entry of this order.

**D. The proposed stipulation**

The parties have exchanged drafts of a stipulation regarding Caterpillar's use of the phone records, the briefing schedule for subsequent motions, and whether to stay the Curaçao litigation. (*See* Marks Emails.) The court ORDERS the parties to file a stipulated protective order consistent with Local Rule 26(c) within three days of the entry of this order. *See* Local Rules W.D. Wash. LCR 26(c). If the parties are unable to agree on a protective order, they may each submit their own versions with explanations for why they cannot agree to specific terms and the court will promptly resolve any disputes.

## IV.  CONCLUSION

For the foregoing reasons, the court ORDERS as follows:

(1) The court DENIES the Bellostas' motion for a TRO (Dkt. # 5).

(2) The court GRANTS the Bellostas' motion to intervene (Dkt. # 3).

(3) The court ORDERS Caterpillar to provide the Bellostas with copies of all phone records produced by T-Mobile within two days of the entry of this order. Caterpillar shall refrain from reviewing, using, or disseminating the phone records produced by T-Mobile in any litigation or proceeding for five days following the entry of this order or until the parties file a stipulated protective order with the court.

(4) The court further ORDERS the parties to enter a stipulated protective order consistent with Local Rule 26(c) within three days of the entry of this order.

Dated this 6th day of November, 2022.

JAMES L. ROBART
United States District Judge